[Cite as *State v. Newton*, 2019-Ohio-3566.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 107195 |
| v. | : | |
| ERIC S. NEWTON, JR., | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 5, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-605078-B

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ryan J. Bokoch, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Noelle A. Powell, Assistant Public Defender, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Eric Newton, Jr. ("Newton") appeals his convictions and sentence for multiple crimes related to a series of criminal incidents. For the reasons that follow, we affirm.

## Substantive History

{¶ 2} This case stems from a series of 17 incidents of breaking and entering at businesses across Cleveland's west side that occurred between September 17, 2015, and October 28, 2015.[1] Most of the incidents involved the thieves entering the businesses by using sledgehammers to make holes in the walls so as to not set off door alarms. The thieves stole merchandise, safes, cash registers, and ATMs from the businesses. They wore Halloween masks, and some of their activity was captured on security cameras, but authorities were unable to determine their identities from the footage.

## October 25 Stop

{¶ 3} On October 25, 2015, at around 2:47 a.m., Officer Justin Setty ("Officer Setty") and his partner responded to an open 911 call from a cellphone in the area around 3351 West 67th Place. Driving northbound on West 67th, Officer Setty observed a white SUV parked on an access road in front of a gate, facing outward towards the street. The vehicle's occupants got out, opened the hood, and began to push on the vehicle's tires. The officers drove up to the vehicle and asked the occupants if they were okay. The individuals responded that their tire light had come on and they were checking on that but were otherwise fine, so the officers kept driving.

---

[1] Newton was indicted on unrelated charges in a separate case, Cuyahoga C.P. No. CR-17-620243-A. His direct appeal in that case, 8th Dist. Cuyahoga No. 107200, is a companion case to this case. Both cases challenge the denial of a motion to suppress following an October 3, 2017 hearing.

{¶ 4} The officers continued to check the surrounding area to identify anything that would have resulted in a 911 call before turning around and driving back down West 67th. When they reached the driveway where the white SUV had been parked, they observed that vehicle pull out in front of them and begin to drive southbound on West 67th. In light of the open 911 call and the individuals' behavior — specifically, checking on a tire that appeared fully inflated, and opening the hood of a car that allegedly had tire trouble — the officers activated their overhead lights and pulled the vehicle over. Officer Setty approached the driver's side of the vehicle, and his partner approached the passenger's side of the vehicle. Officer Setty observed that one passenger was crouched in the rear cargo area of the SUV, was dripping wet, was not wearing shoes, and his socks appeared to be soiled. Upon seeing this passenger, the officers proceeded to get verbal confirmation from each occupant of the vehicle that everyone was okay and that no one was in the vehicle against their will. The officers also realized that a cell phone inside the vehicle was tuned to the radio channel for the Cleveland Police Department's Second District. While speaking to the occupants of the vehicle, officers also observed two masks, a gorilla mask, and a "Scream" mask.

{¶ 5} The officers proceeded to identify everyone in the vehicle and confirm that none of the individuals had any outstanding warrants. Officer Setty testified that he was "pretty certain" that these individuals were involved in the ongoing string of break-ins in the Second District, but they had no probable cause to prolong

the stop or arrest anyone in the car. Officer Setty documented the results of the stop in an informational memo to distribute to the police department.

{¶ 6} Later that evening, Rose's Discount Store, located approximately half a block down the road from where this stop occurred, was broken into through the rear wall of the building. When the officers arrived on the scene at Rose's, they observed a stolen U-Haul parked and running at the rear of the store. The individuals in the white SUV — Anthony Palmentera ("Palmentera"), Jose Rivera, Jr. ("Jose"), Jose Rivera, Sr., and Newton — became suspects in that break-in.

## October 28 Stop

{¶ 7} On October 28, 2015, at around 1:12 a.m., Officer David Gallagher ("Officer Gallagher") and his partner, Officer Ryan Miranda ("Officer Miranda") responded to an alarm at the rear entrance to Dollar Mart located on 3410 Clark Avenue in Cleveland, Ohio. Upon arriving at the rear of the building, Officer Gallagher observed a white Ford Explorer near the rear of the store. Officer Gallagher observed the vehicle start driving, stop driving, and then start driving again. This unusual driving, together with the vehicle's location near the rear of the building where an alarm had recently gone off around 1 a.m., was suspicious to the officers, so they stopped the vehicle.

{¶ 8} Officer Gallagher approached the driver's side of the vehicle and began speaking with Amanda Rivera ("Amanda"), the driver. He asked her to roll the rear windows down and subsequently observed three males — Palmentera, Jose, and Newton — in the backseat. Upon identifying these three passengers, the officers

realized that these were the individuals who had been pulled over several days earlier and were suspects in the neighborhood break-ins. The officers then arrested all four individuals. The officers searched Jose and discovered that he was wearing a harness and straps underneath his clothing. According to Officer Gallagher, both Jose and Newton were extremely wet. The officers also observed gloves, masks, and tools in the backseat of the vehicle.

{¶ 9} During the arrests, the officers seized two cell phones from the car. One phone belonged to Amanda, and the second phone belonged to Newton. Police subsequently obtained a warrant to search the contents of the phones to obtain evidence related to the break-ins. In the affidavit supporting the warrant, Cleveland Police Detective John Lally ("Detective Lally") stated that the phones were recovered from the white Ford Explorer and that this vehicle had been used in at least two breaking and enterings. The affidavit also described one of the cell phones as belonging to Amanda and the other cell phone as, erroneously, belonging to Jose.

{¶ 10} Following the arrests, officers went to Dollar Mart and investigated the scene. They discovered tools and rope leading to the roof of the store. The officers contacted the Cleveland Fire Department to go up to the roof and determine if that was how the suspects had entered, or attempted to enter, the store. This investigation revealed that the suspects had entered the store through the roof.

**Other Incidents**

{¶ 11} Other incidents were described by witness testimony at trial. The earliest incident described at trial was a breaking and entering at Ziggy's on

September 17, 2015, where the group stole lottery tickets and cash. On September 30, 2015, the group attempted to break in to a Family Dollar store but broke a hole through the rear wall of Xtreme Clothing, a neighboring business in the same shopping plaza. They proceeded to steal merchandise, including clothing, shoes, wallets, and watches, along with two safes, a television, credit cards, and cash from the store.

{¶ 12} Early in the morning on October 2, 2015, officers responded to a call detailing a break-in in progress at Hanini Subs and a U-Haul truck parked outside the store. The responding officers observed a U-Haul truck swerve and stop before its occupants exited the truck and fled. The officers proceeded to investigate the truck and saw that it contained an ATM, a rack of lottery tickets, and duffel bags full of cigarettes and baby formula. An investigation revealed that the suspects had broken into Hanini Subs by smashing a hole through the rear cinder block wall of the building. The investigation also revealed that the U-Haul was stolen.

{¶ 13} On October 17, 2015, suspects broke into a Little Caesars pizza and Subway through the rear cinder block wall of both businesses. The suspects broke into the safe in each business and stole cash from the safes and cash registers.

{¶ 14} On October 22, 2015, a Georgio's Pizza was broken into. The suspects broke into the building by smashing through a cinder block wall and proceeded to smash part of the counter in order to access the safe. Palmentera testified that they took a safe from Georgio's Pizza and that the safe contained a black automatic gun with a wood grip. He explained that he did not open the safe, but Newton and Jose

told him about its contents. In addition, the responding officer testified that the owner of Georgio's informed him that a black 9 mm Smith and Wesson semiautomatic pistol had been taken from the safe.

{¶ 15} All of these crimes were committed by some combination of Newton, Jose, Jose Rivera, Sr., Amanda, and Palmentera. Jose testified that sometimes the targeted businesses were identified by members of the group and the crimes were planned in advance, and other incidents were unplanned. He also testified that the individuals would take turns making holes, entering businesses to take merchandise, acting as a lookout, and driving.

## Procedural History

{¶ 16} On April 14, 2016, the Cuyahoga County Grand Jury issued a 50-count indictment against Palmentera, Newton, Amanda, and Jose. Newton was charged in 25 of the 50 counts, including one count of engaging in a pattern of corrupt activity with a furthermore clause, one count of possessing criminal tools, and multiple counts of theft, grand theft, breaking and entering, vandalism, safecracking, and receiving stolen property.

{¶ 17} On January 6, 2017, Newton filed a motion to sever his trial from that of Jose and Amanda because both had made videotaped statements against Newton. On January 12, 2017, Newton filed a pro se motion to dismiss based on an alleged violation of his speedy trial rights.

{¶ 18} On January 31, 2017, the state placed a plea offer on the record for all defendants. With respect to Newton, the state would accept a guilty plea to an

amended count of engaging in a pattern of corrupt activity, two counts of grand theft, six counts of breaking and entering, and one count of possessing criminal tools. Newton rejected this offer. All three of his codefendants accepted plea deals. Jose was charged in 49 of the 50 counts. He pleaded guilty to 17 counts, testified against Newton at trial, and was sentenced to five years in prison. Palmentera was charged in 38 of the 50 counts. He pleaded guilty to nine counts, testified against Newton at trial, and was sentenced to four years. Amanda was charged in 11 of the 50 counts. She pleaded guilty to four counts and was sentenced to one year of community control on each count.

{¶ 19} Newton filed a grievance against his counsel. In response, his counsel filed a motion to withdraw on March 30, 2017. On April 4, 2017, the court granted the motion to withdraw and appointed new counsel for Newton. On July 7, 2017, the trial court appointed an additional attorney to represent Newton as second chair.

{¶ 20} On August 15, 2017, the state informed Newton and the court that its original plea offer was still in place, and Newton again rejected the offer.

{¶ 21} On September 17, 2017, Newton filed a motion to suppress. The state responded to the motion to suppress on October 3, 2017, and a hearing on the motion was held that day. The state called Officer Gallagher, Officer Setty, and Detective Lally as witnesses. Following the hearing, the court denied the motion to suppress.

{¶ 22} A jury trial began on October 6, 2017. The state called 24 witnesses, including various police officers and detectives involved with the case, numerous

victims, Palmentera, and Jose. On October 16, 2017, the state rested its case. On October 17, 2017, the state made several amendments to the indictment. The "furthermore" clause was deleted from Count 10, reducing that theft offense from a felony of the third degree to a felony of the fourth degree. Defense counsel made an oral Crim.R. 29 motion, and the court denied this motion.

{¶ 23} On October 18, 2017, the jury returned guilty verdicts on 23 of the 25 counts and not guilty verdicts on one count of theft and one count of receiving stolen property. Newton was referred for a presentence investigation report ("PSI") and psychiatric evaluation.

{¶ 24} A sentencing hearing was held on April 20, 2018. The court sentenced Newton to a total of 22 years. The court also ordered restitution in the following amounts: $3,000 to victim Georgio's; $3,050 to victim U-Haul; $18,000 to victim Expo Wireless; $500 to Dollar Mart; and $5,000 to Extreme Clothing. The court stated that Newton and his codefendants were jointly and severally liable for the restitution amounts. The court also sentenced Newton to 34 years for unrelated crimes in case Cuyahoga C.P. No. CR-17-620243-A. The court ordered that the sentences in both cases be served consecutively, for an aggregate sentence of 56 years.

{¶ 25} Newton appealed, presenting the following assignments of error for our review:

    I.    The trial court erred when it overruled Eric Newton's Motion to
          Suppress when, one, the initial stop was improper and, two, the

warrant affidavit used to search the contents of Mr. Newton's cell phone contained false information.

II. Newton received ineffective assistance of counsel when defense counsel failed to cite to the bodycam footage showing Newton's ownership of the phone in his Franks challenge.

III. There was insufficient evidence to convict Newton of engaging in [a] pattern of corrupt activity as a felony in the first degree as there was insufficient evidence to prove count 25 — grand theft of a firearm.

IV. Newton received ineffective assistance of counsel when defense counsel failed to move for dismissal pursuant to Rule 29 on Count 1, engaging in a pattern of corrupt activity, when the state failed to prove operability of the weapon referenced in Count 25, the predicate count supporting Count 1.

V. The jury's verdicts finding Mr. Newton guilty are not supported by the manifest weight of the evidence and his convictions violate his rights to fair trial and due process as protected by the constitutions of the United States and the State of Ohio.

VI. The trial court abused its discretion by ordering restitution without considering Newton's present and future ability to pay.

VII. Newton received ineffective assistance of counsel when counsel failed to object to the restitution order on the grounds that the trial court failed to make findings about Newton's present and future ability to pay.

VIII. The trial court imposed a sentence contrary to law and violated Eric Newton's Fourteenth Amendment right to due process and Sixth Amendment right to trial by jury when it punished Newton for exercising his right to trial.

## Law and Analysis

{¶ 26} Because some of Newton's assignments of error deal with similar issues, we will address them out of order for ease of discussion.

## I. Motion to Suppress

{¶ 27} In Newton's first assignment of error, he argues that the trial court erred when it overruled his motion to suppress because the initial stop was improper and the warrant affidavit used to search his cell phone contained false information.

{¶ 28} We review a trial court's decision on a suppression motion using a mixed standard of review. *State v. Riedel*, 2017-Ohio-8865, 100 N.E.3d 1155, ¶ 30 (8th Dist.). Because the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate witness credibility, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*, citing *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994), and *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court's application of the law to its factual findings is reviewed de novo. *Id.*, citing *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100.

{¶ 29} The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures. Warrantless searches are per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Evidence obtained from an unreasonable search or seizure must be suppressed. *Mapp v. Ohio*, 367 U.S. 643, 651, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Here, Newton argues that the evidence obtained from his cell phone should be suppressed because neither the initial stop

nor the warrant to search the phone's contents were reasonable under the Fourth Amendment.

## A. Initial Stop

{¶ 30} Newton argues that the initial stop on October 28, 2015, was unreasonable because it cannot be justified as a traffic stop. An officer's observation of any traffic law violation constitutes sufficient grounds to stop the vehicle. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 22, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996). Here, although the stop was repeatedly referred to as a traffic stop, Officer Gallagher did not cite any traffic violation as the grounds for the stop. We agree with Newton that the stop cannot be supported by any alleged traffic violation; however, the stop was not unreasonable.

{¶ 31} One well-known exception to the Fourth Amendment's warrant requirement is an investigative stop. In *Terry v. Ohio*, the United States Supreme Court held that an officer may stop an individual when the officer has a reasonable suspicion, supported by specific and articulable facts and rational inferences from those facts, that the individual is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Reasonable suspicion [justifying] a '*Terry* stop' requires something more than an 'inchoate and unparticularized suspicion or "hunch."'" *Cleveland v. Maxwell*, 8th Dist. Cuyahoga No. 104964, 2017-Ohio-4442, ¶ 19, quoting *Terry* at 27. Courts reviewing whether an officer had a reasonable articulable suspicion must consider the totality of the circumstances "'as viewed through the eyes of the reasonable and prudent police officer on the

scene who must react to events as they unfold.'" *Id.*, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 32} Here, police in Cleveland's Second District were aware that the area had been impacted by a series of break-ins for over a month at the time of the stop in this case. Officer Gallagher and Officer Miranda were responding to an alarm at the rear entry of a business at approximately 1 a.m. Upon approaching the area of the building where the alarm had gone off, the officers observed a white SUV start to drive away, stop, and then proceed to drive away from the building. Officer Gallagher testified that this vehicle was the only one in the area running at the time, and it seemed "very suspicious" that it was trying to leave the scene of where the alarm had gone off. The individuals were in the immediate area of an alarm that had recently been triggered. It was around 1 a.m., in an industrial area, and no one else was around. The individuals appeared to be trying to leave the area. All of this is sufficient to establish that the officers had a reasonable suspicion, supported by specific and articulable facts, that the individuals in the white SUV were engaged in criminal activity, thereby justifying the *Terry* stop.

{¶ 33} Newton correctly points out that the officers' observations after they initiated the stop — specifically, the Texas license plates on the vehicle and the identities of the individuals — cannot serve to justify the stop. In light of the reasonable articulable suspicion described above, though, these observations are not necessary to justify the investigative stop.

## B. Warrant Affidavit

{¶ 34} Newton also argues that the evidence from his cell phone should have been suppressed because the warrant affidavit that permitted police to access the phone's contents contained a false statement. The false statement challenged by Newton is the description of one of the cell phones as belonging to Jose, rather than Newton.

{¶ 35} To suppress evidence obtained with a search warrant, it is necessary to review the affidavit supporting the warrant. Search warrant affidavits enjoy a presumption of validity. *State v. Sheron*, 8th Dist. Cuyahoga No. 98837, 2013-Ohio-1989, ¶ 29. Where a warrant is based on false material in the affidavit that is necessary to establish probable cause, the fruits of the search warrant should be suppressed. *Franks v. Delaware*, 438 U.S. 154, 155, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). A challenge to the factual veracity of a warrant affidavit requires allegations of deliberate falsehood or reckless disregard for the truth. *State v. Roberts*, 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980), citing *Franks* at 171. Even if a defendant makes a preliminary showing of such a false statement, a hearing is not required unless, without the allegedly false statements, the affidavit is unable to support a finding of probable cause. *Roberts*, citing *Franks*.

{¶ 36} Newton asserts that the affidavit contains a false statement made either intentionally or with a reckless disregard for the truth because it was known to the arresting officers, and captured on bodycam footage, that one of the phones seized belonged to Newton, and not to Jose, as alleged in the affidavit. Sergeant

Lally, the affiant, was not present when the individuals were arrested. While the statement as to the phone's ownership is demonstrably false, Newton has not pointed to anything that would indicate that Sergeant Lally made the false statement intentionally or with a reckless disregard for the truth. To the contrary, Sergeant Lally testified that law enforcement typically determines ownership of the phone based on the contents of the phone obtained through the warrant itself. Because law enforcement is not permitted to search a phone's contents without a warrant to determine whose phone it is, any references to ownership of a phone in a search warrant are inherently speculative or preliminary.

{¶ 37} Further, even if the false statement was made intentionally or with a reckless disregard for the truth, the remainder of the affidavit established sufficient probable cause to search the contents of the phone. The affidavit stated that the affiant believed that both cell phones contained evidence of burglary crimes. The affiant based this statement on the fact that the phones were seized during a search of the vehicle that police believed was used by the suspects in these burglary crimes following the arrest of those suspects: namely, Amanda, Jose, Anthony Palmentera, and Eric Newton. Because of the circumstances in which the phones were obtained, probable cause existed to search the phones, regardless of which of the aforementioned individuals owned the phones. Therefore, incorrectly identifying one of the phones as belonging to Jose rather than Newton does not negate the probable cause supporting the search warrant.

{¶ 38} For these reasons, the trial court's decision to deny Newton's motion to suppress was proper. The first assignment of error is overruled.

## II. Sufficiency of the Evidence

{¶ 39} In Newton's third assignment of error, he argues that there was insufficient evidence to sustain a conviction for engaging in a pattern of corrupt activity, a first-degree felony.

{¶ 40} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would support a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 41} Newton was charged with one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1), which provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." "Pattern of corrupt activity" is defined as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and

are not so closely related to each other and connected in time and place that they constitute a single event." This count also contained a furthermore specification:

> Furthermore, pursuant to Section 2923.32(B)(1), at least one of the incidents of corrupt activity, as defined in Section 2923.31(I)(2)(a) or (I)(2)(c) is a felony of the third degree or higher (THEFT, COUNTS 10 AND 25), contrary to and in violation of Section 2923.32(A)(1) of the Ohio Revised Code, and thereby, this [count] constitutes a Felony of the First degree * * *.

Newton argues that because none of the incidents of corrupt activity were felonies of the third degree or higher, he could not have been convicted of this count as charged. At the end of trial, just prior to Newton's Crim.R. 29 motion, the state amended Count 10 of the indictment to delete the furthermore clause, thereby amending the offense from a felony of the third degree to a felony of the fourth degree. Therefore, the furthermore clause attached to engaging in a pattern of corrupt activity could only have been based on Count 25. Count 25 charged Jose with grand theft, a felony of the third degree, in violation of R.C. 2913.02(A)(1) and alleged that he:

> did with purpose to deprive the owner, Georgio's Pizza/Jorge Rochet, of 9mm Smith and Wesson or services, knowingly obtain or exert control over either the property or services without the consent of the owner or person authorized to give consent and the property stolen is a firearm or dangerous ordnance.

This count was elevated to a felony of the third degree because the property alleged to have been stolen was a firearm or dangerous ordnance, pursuant to R.C. 2913.02(B)(4). Pursuant to R.C. 2923.11, a "firearm" means

> Any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.

"Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

{¶ 42} Jose was the only defendant charged in Count 25, and this count was dismissed as part of his plea agreement with the state of Ohio. According to Newton, in order for the jury to find him guilty of engaging in a pattern of corrupt activity as charged, it was required to find beyond a reasonable doubt that Jose was guilty of grand theft of an operable firearm as indicted in Count 25. It could not have done so, according to Newton, where the state presented no evidence of the operability of the firearm.

{¶ 43} The state points out that the victim and two codefendants testified that a handgun was stolen during the breaking and entering at Georgio's Pizza. Further, the victim testified that the gun was kept in a safe under the counter, and Jose testified that he was concerned about letting Palmentera have access to the gun for safety reasons and Newton never took possession of the gun because he did not handle guns. The foregoing testimony is consistent with the notion that the gun was kept in the store for protection purposes and therefore, served as circumstantial evidence to establish that the gun was operable. Circumstantial evidence is equally probative as direct evidence. *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988), citing *State v. Griffin*, 13 Ohio App.3d 376, 469 N.E. 2d 1329 (1st

Dist.1979). Therefore, viewing the evidence in the light most favorable to the state, there was sufficient evidence supporting Newton's conviction for engaging in a pattern of corrupt activity. His third assignment of error is overruled.

### III. Manifest Weight of the Evidence

{¶ 44} In Newton's fifth assignment of error, he argues that his convictions are against the manifest weight of the evidence because there is no physical evidence linking him to these crimes, his identity is never seen on any surveillance footage, and he was not found with any stolen goods. Newton argues that the only evidence against him is his presence in the vehicle with his codefendants, and his codefendants' subsequent testimony against him at trial as part of their respective plea deals.

{¶ 45} Unlike a challenge to the sufficiency of evidence, a manifest weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When reviewing a manifest weight challenge, a court reviews the entire record, weighing all evidence and reasonable inferences and considering the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 46} After a thorough review of the record, we conclude that Newton's convictions are not against the manifest weight of the evidence. Newton

acknowledges his presence in the vehicle with his codefendants on October 28, 2015, when they were arrested. He ignores, however, his earlier presence with Jose and Palmentera at two of the crime scenes in this case. Further, while this court is mindful of the considerable incentive for his codefendants' to testify against him at trial, we cannot summarily discount their testimony in light of this incentive. While Newton's argument implicitly attacks the credibility of his codefendants' testimony against him by pointing out they received significant consideration in exchange for their testimony, we find nothing in the record that causes us to question their credibility to such a degree as to completely, or even significantly, negate the value of their testimony.

{¶ 47} Newton argues that there is no physical evidence tying him to the crimes beyond his presence in the SUV. Physical evidence is not required to establish a defendant's guilt beyond a reasonable doubt. Ohio courts have consistently held that a defendant may be convicted solely on the basis of circumstantial evidence. *Nicely*, 39 Ohio St.3d at 151, 529 N.E.2d 1236, citing *State v. Kulig*, 37 Ohio St.3d 157, 309 N.E.2d 897 (1974); *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), *cert. denied*, *Hankerson v. Ohio,* 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130 (1982). Circumstantial evidence is equally probative as direct evidence. *Id.*, citing *Griffin*, 13 Ohio App.3d 376, 469 N.E. 2d 1329. Despite Newton's assertions, the absence of any particular piece of physical evidence in this case does not undermine Newton's conviction. We note that although Newton argues that he was not found with any stolen property, the police inventory of the

vehicle in which Newton was found prior to his arrest reflects multiple references to stolen goods. It also contains references to the tools used to conduct these break-ins, many of which were described at length in witness testimony at trial. Further, the state presented significant witness testimony regarding Newton's participation in the crimes with which he was charged. Upon considering the totality of the evidence in this case, together with reasonable inferences therefrom, we cannot conclude that the trier of fact lost its way. Newton's convictions are not against the manifest weight of the evidence. Therefore, Newton's fifth assignment of error is overruled.

## IV. Restitution

{¶ 48} In Newton's sixth assignment of error, he argues that the trial court abused its discretion by ordering restitution without considering Newton's present and future ability to pay.

{¶ 49} R.C. 2929.18(A)(1) provides, in relevant part, that the court imposing a felony sentence may sentence the offender to any financial sanction, including:

> Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount

of economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.

Further, R.C. 2929.19(B)(5) """imposes a duty upon the trial court 'to consider the offender's present or future ability to pay' before imposing any financial sanctions under R.C. 2929.18.""" *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 81 (8th Dist.), quoting *State v. Aniton*, 8th Dist. Cuyahoga No. 102440, 2015-Ohio-4080, ¶ 19, quoting *State v. Tate*, 2d Dist. Montgomery No. 25386, 2013-Ohio-5167, ¶ 52. A sentencing court is not required to "explicitly state in its judgment entry that it considered a defendant's ability to pay a financial sanction." *State v. Lewis*, 8th Dist. Cuyahoga No. 90413, 2008-Ohio-4101, ¶ 12. An appellate court is to "look to the totality of the record" to see if the court considered a defendant's ability to pay, and a trial court has satisfied this requirement when the record shows that the court considered a PSI that provides pertinent financial information regarding the offender's ability to pay restitution. *Id.*, citing *State v. Smith*, 4th Dist. Ross No. 06CA2893, 2007-Ohio-1884, ¶ 42.

{¶ 50} Here, the court stated at sentencing that it had considered the PSI and the mitigation of penalty report, as well as all of the information it received at the sentencing hearing. This is sufficient to show that the court complied with the statutory requirements of R.C. 2929.18. Newton's sixth assignment of error is overruled.

## V. Ineffective Assistance of Counsel

**{¶ 51}** In Newton's second, fourth, and seventh assignments of error, he argues that he received ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance at trial was seriously flawed and deficient and fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 687-688.

## A. *Franks* Challenge

**{¶ 52}** Newton first argues that his counsel was ineffective for failing to present evidence supporting his *Franks* challenge to the warrant affidavit. Specifically, Newton argues that his counsel was deficient for not introducing the bodycam evidence corroborating his assertion that law enforcement knew that one of the seized cell phones belonged to Newton. We disagree.

**{¶ 53}** Newton argues that the *Franks* challenge ultimately failed because the trial court pointed out that there was no argument from counsel that there was anything false in the affidavit. A review of the record from the suppression hearing, however, shows that defense counsel argued that the affidavit was based on the false statement that one of the phones was owned by Jose. Although there was some discussion on the record as to the different descriptions present in the search

warrant and supporting affidavit, these discrepancies do not change defense counsel's argument in his motion to suppress.

{¶ 54} Further, Newton mischaracterizes the trial court's reasons for denying the motion to suppress. Pursuant to the foregoing discussion related to the motion to suppress, individual ownership of the cell phone was not necessary to establish probable cause. Therefore, counsel's failure to use the bodycam evidence to support his theory that law enforcement knew that one of the phones belonged to Newton was not deficient because it would not have changed the outcome of the motion to suppress. Newton's second assignment of error is overruled.

## B. Crim.R. 29 Dismissal

{¶ 55} Newton next argues that his counsel was ineffective for failing to move for dismissal on Count 1, engaging in a pattern of corrupt activity, when the state failed to present sufficient evidence that the firearm was operable. A review of the record shows that defense counsel did in fact make a Crim.R. 29 motion with respect to engaging in a pattern of corrupt activity. This motion immediately followed a thorough discussion of the furthermore clause contained in Count 1. Therefore, Newton is effectively arguing that his counsel's failure to reiterate an unsuccessful argument that the court had dismissed minutes earlier would have resulted in a different result — namely, a dismissal of Count 1. We disagree that constitutes deficient performance. Further, in light of the foregoing analysis and our conclusion that the state presented sufficient evidence to support Newton's conviction on Count 1, any more specific argument supporting counsel's failure to

repeat a specific argument in support of his motion would not have resulted in a different outcome for Newton. His fourth assignment of error is overruled.

## C. Restitution

{¶ 56} In his seventh assignment of error, Newton argues that his counsel was ineffective for failing to object to the trial court ordering him to pay restitution without considering his present and future ability to pay. In light of the foregoing analysis regarding the court's restitution order, we cannot find that there was a reasonable probability of a different outcome had defense counsel objected. This assignment of error is overruled.

## VI. Sentence

{¶ 57} Finally, Newton argues in his eighth assignment of error that his sentence was contrary to law because he was punished for exercising his right to trial by jury. In support of his argument, Newton points to the trial court's pretrial statement that if the case was resolved by a plea agreement, and if the parties agreed to a sentencing range of 12 to 16 years as part of that plea agreement, then the court would impose a sentence within that range. Newton did not resolve either this case or CR-17-620243-A with a plea agreement; he rejected the state's plea deal and proceeded to a trial in both cases. Following both trials, the court sentenced Newton to an aggregate prison term of 56 years. Newton asserts that the trial court imposed a harsher sentence — 56 years as opposed to 12 to 16 years — because he exercised his constitutional right to a trial. Newton points to the sentences of his codefendants — community control, four years, and five years, respectively — to support his

assertion that the court imposed a harsher sentence on Newton because he elected to have a trial. We disagree.

{¶ 58} It is well-established that "a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 8, citing *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989).

{¶ 59} Newton has not cited any authority for his argument that a trial court is somehow bound to a pretrial indication that it would comply with a recommended sentencing range following a plea deal that the defendant rejects. On the contrary, there are multiple reasons why a court might impose a different sentence on a defendant following a trial. First, in the instant case, the mere fact that Newton was convicted of 23 felonies, rather than the 10 felonies to which he would have pleaded guilty pursuant to the plea offer, could explain the harsher sentence. Further, the nature of a trial is such that more information bearing on sentencing will be available to the judge after trial, including further insight into the crime itself and to the defendant's "'moral character and suitability for rehabilitation.'" *Rahab*, quoting *Alabama v. Smith*, 490 U.S. 794, 801, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). Similarly, a guilty plea may justify leniency because the prosecutor may offer a more lenient sentence as part of the plea-bargaining process, whereas after trial, "'the factors that may have indicated leniency as consideration for the guilty plea are no longer present.'" *Rahab* at ¶ 15, quoting *Smith* at 801.

{¶ 60} In light of the foregoing factors, we review the record to determine whether there is evidence of actual vindictiveness, and Newton's sentence will be reversed only if we clearly and convincingly find that it is contrary to law because it was imposed as a result of actual vindictiveness. *Id.* at ¶ 19. Upon reviewing the entire record, we find no evidence that the trial court imposed Newton's sentence as a result of vindictiveness. At sentencing, the court stated that it had reviewed the PSI and mitigation of penalty report. The court heard statements from the prosecutor and defense counsel, as well as Newton himself. The court referred to Newton's extensive and varied criminal history across multiple jurisdictions, and the impact that the incidents in this case had on the community. The court also stated that it considered the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. Finally, the court made the requisite findings under R.C. 2929.14 before imposing consecutive sentences. In light of this, we cannot clearly and convincingly find that Newton's sentence was vindictively imposed. His eighth assignment of error is overruled.

{¶ 61} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

ANITA LASTER MAYS, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR