[Cite as *State v. Newton*, 2019-Ohio-3653.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107200 |
| v. | : | |
| ERIC S. NEWTON, JR., | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 12, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-620243-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carl Sullivan, Assistant Prosecuting Attorney, *for appellee.*

Patricia J. Smith, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Eric S. Newton, Jr. ("Newton") appeals the denial of a motion to suppress as well as his convictions for pandering sexually oriented matter involving a minor, illegal use of a minor, and possessing criminal

tools.  Upon review, we find the trial court's denial of the motion to suppress was proper, and Newton's convictions were not against the manifest weight of the evidence.  We therefore affirm Newton's convictions.

## I. Procedural History

{¶ 2}   On October 28, 2015, following a traffic stop, Newton was arrested in connection with a series of several incidents of breaking and entering. Subsequently, he was charged in a 47-count indictment relating to these crimes, in Cuyahoga C.P. No. CR-16-605078-B.  During a search of the vehicle in which Newton was riding, the police seized evidence pertaining to the offenses charged in Case No. CR-16-605078, including a cell phone belonging to Newton.  After obtaining a search warrant to search the contents of the phone, additional charges were filed against Newton.

{¶ 3}   On August 8, 2017, Newton was charged in a 31-count indictment in Cuyahoga C.P. No. CR-17-620243-A as follows:  Counts 1-17, pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322(A)(2); Counts 18-20, 24, and 25, pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322(A)(1); Counts 21-23, illegal use of minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(1); Counts 26-30, illegal use of minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(3); and Count 31, possessing criminal tools, in violation of R.C. 2923.24(A), with a forfeiture specification.

{¶ 4} On September 17, 2017, Newton filed a motion to suppress the evidence obtained from the October 2015 search in Case No. CR-16-605078-B but incorporated the motion into the lower case of this appeal as well. The trial court denied the motion to suppress, and on October 18, 2017, Newton was convicted of multiple counts in Case No. CR-16-605078-B and sentenced to 22-years incarceration.

{¶ 5} Approximately four months after his conviction in Case No. CR-16-605078-B, on February 21, 2018, a jury returned a verdict of guilty on all charges in Case No. CR-17-620243-A. Thereafter, the court sentenced Newton to 34 years in prison, to run consecutively to his sentence in Case No. CR-16-605078-B. Newton appealed both cases, and this court ordered the cases to be treated as companion appeals, with each appeal briefed, argued, and disposed of separately by the same panel.

{¶ 6} In this appeal, Newton assigned the following errors for our review:

I. The trial court erred when it overruled the defendant-appellant's motion to suppress where the arresting officer lacked probable cause and specific, articulable facts to justify an investigatory stop.

II. Where the quality of the evidence did not support the trier of facts verdict of guilt, as there was not sufficient evidence to link the defendant to the acts in question, the defendant[-appellant's] convictions were against the manifest weight of the evidence.

## II. Evidence at Trial

{¶ 7} The state presented the following witnesses at trial: Cleveland Police Officer David Gallagher; Cleveland Police Sergeant John Lally; FBI Special Agent

Andrew Burke; FBI Special Agent Kevin Matthews; FBI Forensics Examiner Daniel Richard; Ohio Internet Crimes Against Children ("OICAC") Task Force Investigator Jason Howell; Cuyahoga County Sheriff's Department Corrections Officer Philip Christopher; and appellant's uncles, Anderson Newton ("Anderson") and Noland Newton ("Noland").

{¶ 8} On October 28, 2015, at approximately 1:12 a.m., Officer Gallagher and his partner conducted a traffic stop involving Newton, Amanda Rivera, Anthony Palmentara, and Jose Rivera. Officer Gallagher was wearing a body camera while conducting the stop. As the officer testified, the camera footage showed Newton in the back seat of the vehicle. During the stop, Officer Gallagher asked Newton to step out of the vehicle. When Newton stepped out of the vehicle, he initially had a black smart phone in his hands. On the body camera, Officer Gallagher told Newton that he could not have his phone "right now."

{¶ 9} Sergeant Lally conducted a follow-up investigation on the traffic stop. He testified that another investigating officer recovered two cell phones from the stopped vehicle — one pink phone located in the front console and one black cell phone located in the rear seat of the vehicle. The evidence envelope containing the black cell phone was marked with the name "Jose Rivera" as "Defendant," and the owner was listed as "unknown." Sergeant Lally testified that the officers obtained a search warrant to retrieve information from the phone. The phones were forwarded to the FBI for a complete forensics examination.

{¶ 10} FBI Special Agent Burke, of the Cleveland Violent Crime and Child Exploitation Task Force, assisted local law enforcement in the investigation of this case. Special Agent Burke, using equipment called "Cellebrite" that extracts data in its complete and unedited form, extracted forensics data from the black cell phone recovered from the back seat of the vehicle in which Newton was riding. Special Agent Burke testified that in the course of extracting the cell phone's data, a Cellebrite extraction report (state's exhibit No. 3) was generated. Special Agent Burke forwarded this report to the investigating officers.

{¶ 11} Sergeant Lally testified that he reviewed the Cellebrite extraction report he received from Special Agent Burke. The report identified numerous computer searches associated with child pornography, such as the following: "young gay boys, gay boy porn videos," "man masturbating boy," "more nude boys," "best young nude boys," "horny nude young boys," "abused teens-extreme-amateur-teen-hardcore-movies-porn," "boy rape boys," and "man f*** young gay boy." The searches were conducted between August 29, 2015, and October 2, 2015.

{¶ 12} The report also included text messages from Jose Rivera to an individual using the black cell phone, dated September 13, 2015. In seven separate messages received within approximately one minute, the text states, "Call me right now. Hurry. Hurry. Bro what the f***. Call ke. Chris. Me." Sergeant Lally testified that he learned through his investigation that Newton also goes by the name "Chris."

{¶ 13} Sergeant Lally further testified regarding emails obtained from the phone. The sergeant identified several email addresses associated with the phone:

Ericnelson19005@gmail.com; Ericnewtonjr@gmail.com; Ericjr1981@gmail.com; and Ericjr19005@yahoo.com. In the email section of the phone, the report obtained five email messages that were sent from the "ericjr19005@yahoo" address. On August 20, 2013, "Eric Jr." from "ericjr19005@yahoo" emailed "Mr. Cock" a message stating,

> I like boys. so if you send me some good ones ill send you some. Hopefully we can build a trusting relationship. i am not a cop or any law enforcement. That pic u have use to be one of my fav on the web site imgsrc.boy. but they cleaned most of it up especially the good stuff, you can call me Chris. i like 10-13. hope to here from you.

And on August 21, 2013, Eric Jr. also sent a message to "Mr. Cock," stating, "i like the ones you sent! seen one of the[m] before. send me some more good ones ill send you some more too." Later that same day, Eric Jr. emailed a message stating, "ill send more you send me some." All of these emails contained attachments.

{¶ 14} Finally, Sergeant Lally testified regarding documents obtained in the "Documents" section of the phone. This section included a document titled, "Eric Newton, Jr. Resume Draft." The resume, which was created on May 3, 2013, and modified on October 21, 2014, included Newton's home address on Grimsby Avenue and the email address of "ericnewtonjr@gmail.com." The report also identified certain photographs that were on the phone, which included photos of Newton as well as photos of unidentified children. Sergeant Lally testified that upon reviewing all of the information contained in the Cellebrite report, he determined the black cell phone belonged to Newton. He conceded, however, that he had no knowledge whether anyone else used Newton's phone. At some point during Sergeant Lally's

investigation of Newton, the sergeant learned that the FBI had been conducting a "parallel" investigation of Newton, and the organizations shared information.

{¶ 15} Special Agent Kevin Matthews, of the FBI's Innocent Images Squad, investigates crimes against children, including online possession, distribution, and receipt of child pornography. Special Agent Burke testified that in investigating online child pornography, he assumes the online identity of an established pornographer. Assuming this individual's identity allows the special agent access to other individuals who are sharing online child pornography, specifically through "peer-to-peer" sharing programs such as Ares and Gigatribe.

{¶ 16} Special Agent Matthews testified that in November 2014, he discovered a Gigatribe user named "Chris19005," with a profile picture of a young black boy, and in December 2014, he discovered four password-protected folders associated with this user, entitled, "all black boys," "mix Ricans china," "white boys," and "young black thugs." The special agent requested the user's password to his password-protected files. The user provided the special agent with his password, which was "boy1." Using the password, Special Agent Burke learned there were 485 files containing images or videos with titles indicative of child pornography in "all black boys" folder, 429 files in "mix Ricans china," 434 files in "white boys," and 67 files in "young black thugs" folder.

{¶ 17} The special agent testified that these files were all associated with "Chris19005" through Gigatribe, and they were all associated with the same internet protocol address ("IP" address) identifying the computer and its location. Of these

files contained in the password-protected folders, the special agent viewed and downloaded approximately 47 images and 24 videos (state's exhibit No. 28). He testified that the images contained child pornography. A representative sample of the titles of the images depicted within the password protected folders that correspond to each count of the indictment include: "New 2010 Boy is Blown 10YO," "New 2012 11 and 12YR Pillow Penis Boy Lick 2 P10800," "A Little Pussy Videos Young Boy," "Little Thai Boys," "P101 African 11YO Boy FMN ("F * * * Man")," and "Young Boy Getting F***." All of the images depicted young children, sometimes teenagers and sometimes prepubescents, engaging in sexual activity of some kind.

{¶ 18} Special Agent Burke also testified regarding the "blog" section of Gigatribe, where users can post comments, words, or files. On "1/11/14," "Chris19005" posted the following message, "i pay money for the best young black boys pics or videos ages 10-13."[1]

{¶ 19} In his investigation, Special Agent Burke learned that the IP address was linked to 12*** Grimsby Avenue, Cleveland, Ohio. The account holder at this address was Louise Newton. Law enforcement then executed a search warrant of the Grimsby Avenue residence.

{¶ 20} The FBI's Daniel Richard testified that in "early 2015," he received from his colleague information on 12*** Grimsby Avenue regarding a child pornography investigation. Agent Richard continued the investigation, including

---

[1] According to Special Agent Burke, it is not clear if the date is January 11, 2014, or November 1, 2014, because Gigatribe is a French company and the French write dates using the sequence: day/month/year.

conducting surveillance and executing a search warrant to search the premises. In executing the search warrant, the law enforcement officers interviewed residents of the house and determined that Newton was the suspect.

{¶ 21} The officers also conducted an onsite forensics examination of all electronic devices found in the home, and they confiscated only items that contained evidence of child pornography, which included a jump drive and an Acer laptop discovered in the bedroom identified as Newton's. The officers also confiscated photographs found in Newton's bedroom. The photographs contained images of Newton with shirtless boys and a photo of a shirtless young boy on satin sheets with money around him. The officers also discovered a notebook in Newton's dresser that included Newton's email account addresses: esnewtjr2000@yahoo.com, Ericnewtonjr@gmail.com, and Ericjr1981@gmail.com.

{¶ 22} Upon conducting an initial forensics examination of the seized computer, Agent Richard discovered approximately 900 images that depicted mostly prepubescent boys and girls in a state of nudity or engaging in some sexual activity. Agent Richard then turned the seized computer over to OICAC investigator, Jason Howell, for further investigation. In conducting a full forensics examination of the Acer laptop, Howell discovered 23,012 images of "child abuse" and 172 "child abuse" videos. The videos totaled more than 27 hours in length. The examination also revealed 26 images and two videos of children under the age of five. All of the images depicted children engaging in sexual activity. In addition to the child abuse materials, Howell discovered computer searches such as "boy porn," "boys sex,"

"boys naked," "boys kissing," "pics of shirtless sagging young black kids," "pics of dead kids hit by cars," and "pics of dead body kids." Howell testified that the user searched "belly and boxers" just 13 days before the search warrant was executed. Additionally, Howell testified that the forensics examination also revealed that another Gigatribe user had messaged the user of this computer, stating, "Sorry you are sharing too young kids. Please go away. You are sharing underage."

{¶ 23} Finally, Howell testified concerning other documents discovered on the Acer laptop, including Newton's resume, which listed his address as "12*** Grimsby Avenue" and his email address as "ericnewtonjr@gmail.com." The examination also revealed that the user emailed files to alternative emails. Howell stated that "ericnewtonjr@gmail.com" sent photos and videos, including one titled "13YO, dark skinned boy.mp4," to "esnewtonjr2000@yahoo.com." According to Howell, Newton's Google account included auto-saved information such as a credit card under the name "Eric Newton Jr.," his account was saved as "Eric Newton," and his Windows user name was "Eric." "Eric" last logged in on April 1, 2015, which was six days before law enforcement officers executed the search warrant.

{¶ 24} Anderson, Newton's uncle, also lived at 12*** Grimsby Avenue, with Newton; Anderson's father, Jerome; and previously his mother, Louise. Anderson stated that his mother passed away approximately one week before law enforcement executed the search warrant at his house. Anderson works in internet design and "electrical" and "mechanical work." He maintains a computer station in the

basement of the house. The basement computer was not confiscated during execution of the search warrant.

{¶ 25} Anderson testified that his father is 86 years old, has dementia, and is not technically proficient. Anderson stated that his brother, Noland, was staying at his house for only a few days when the search was conducted. Anderson identified Newton's bedroom for the authorities, which is the bedroom in which Newton stayed until Noland arrived in town for Louise's memorial service. Anderson also identified the Acer laptop as belong to Newton, although he admitted that on occasion he would play computer games with his children using Newton's laptop. Anderson stated that he never downloaded child pornography or a peer-to-peer software for purposes of sharing child pornography.

{¶ 26} Noland, Newton's other uncle, testified that he resides in Atlanta but came to Cleveland for his mother's memorial service a few days before April 7, 2015, when the search warrant was executed. Noland is an electrical engineer and programs computer software. Noland testified that he stayed in Newton's bedroom while visiting. He stated that he had never downloaded child pornography or a peer-to-peer software for purposes of sharing child pornography. He identified one desktop computer and two Dell laptops belonging to him that were discovered in the residence by law enforcement. These computers were not confiscated during the search.

### III. Motion to Suppress

{¶ 27} Newton contends in his first assignment of error that the trial court erred when it denied his motion to suppress the evidence obtained as a result of the police officers' search of the vehicle in which he was riding. In support, he argues that the record does not show that the police officers had reasonable suspicion that "criminal activity was afoot," and therefore, all evidence obtained as a result of the search must be suppressed.

{¶ 28} In the companion appeal, *State v. Newton*, 8th Dist. Cuyahoga No. 107195, 2019-Ohio-3566 (lower court No. CR-16-605078), Newton also assigned as error the trial court's denial of his motion to suppress. In that appeal, this panel affirmed the trial court's decision on the motion to suppress, finding that the officers had reasonable suspicion, supported by articulable facts, that the individuals in the vehicle in which Newton was a passenger were engaged in criminal activity, and therefore, the stop was justified. *Newton* at ¶ 30. We also concluded that Newton's argument regarding a purportedly "false statement" made in the search warrant regarding ownership of the cell phone seized in the vehicle had no merit, thus finding that "[b]ecause of the circumstances in which the phones were obtained, probable cause existed to search the phones, regardless of which [individuals] owned the phones." *Id.* at ¶ 35. We found, therefore, that the motion to suppress was proper. *Id.* at ¶ 36.

{¶ 29} For purposes of this appeal, we adopt the analysis and conclusion made in the companion appeal regarding Newton's motion to suppress and incorporate the same in this appeal. Accordingly, Newton's first assignment of error

is overruled. For a more complete recitation of the court's analysis on Newton's motion to suppress, *see Newton* at ¶ 25-36.

## IV. Manifest Weight

{¶ 30} In his second assignment of error, Newton contends that his conviction is against the manifest weight of the evidence. In support, he essentially argues that there was insufficient evidence connecting him to the child pornography, stating that three other adults lived in the home with Newton where the computer was located, all having access to the computer, and Newton was rarely home. Newton also argues that the state's witness could not identify who put the child pornography on Newton's phone.

{¶ 31} A manifest weight challenge questions whether the state has met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). This challenge raises a factual issue:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Thompkins* at 388.

**{¶ 32}** It is well established that the elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence, on the other hand, is evidence that requires "the drawing of inferences that are reasonably permitted by the evidence." *Id. See also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[c]ircumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind").

**{¶ 33}** Circumstantial and direct evidence are of equal evidentiary value. *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12. "Although there are obvious differences between direct and circumstantial evidence, those differences are irrelevant to the probative value of the evidence." *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). In some cases, circumstantial evidence may be "'more certain, satisfying and persuasive than direct evidence.'" *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990), quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

**{¶ 34}** Newton was convicted of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(1) and (2):

> (A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
> (1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor or impaired person participating or engaging in sexual activity, masturbation, or bestiality;
> (2) Advertise for sale or dissemination, sell, distribute, transport, disseminate, exhibit, or display any material that shows a minor or impaired person participating or engaging in sexual activity, masturbation, or bestiality.

**{¶ 35}** Newton was also convicted of illegal use of minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(1) and (3):

> (A) No person shall do any of the following:
> (1) Photograph any minor or impaired person who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor or impaired person in a state of nudity * * *.
> * * *
> (3) Possess or view any material or performance that shows a minor or impaired person who is not the person's child or ward in a state of nudity * * *.

**{¶ 36}** Newton was further convicted of possessing criminal tools in violation of R.C. 2923.24(A), namely a cell phone and an Acer laptop computer.

**{¶ 37}** Here, Newton does not dispute that the materials discovered on the Acer laptop and the black cell phone are evidence of child pornography. Rather, he contends that the state failed to provide enough evidence linking him to the child pornography. In support, he argues that he lived in a home where two other individuals with computer experience had access to Newton's computer and his

computer passwords and someone else could have placed the child pornography on Newton's phone. We find Newton's argument unpersuasive.

{¶ 38} Though it is true that the state did not present any eyewitness who testified that he or she saw Newton viewing, downloading, or sharing any of the child pornography found on the devices, the evidence linking Newton to the child pornography is overwhelming. The evidence demonstrates that law enforcement officers seized only the computers that contained child pornography. The only device containing child pornography at Newton's residence was the Acer laptop discovered in Newton's bedroom. The laptop was identified as belonging to Newton. The forensics examination of the laptop revealed Newton's resume, which contained his home address, 12*** Grimsby Avenue, and his email address of "ericnewtonjr@gmail.com." Also discovered in the bedroom was a notebook containing various email addresses linked to Newton.

{¶ 39} The forensics examination of the computer also revealed that Newton had emailed files containing child pornography from one of his email addresses to another of his email addresses. The evidence showed that Newton's profile name was "Chris," and his username was "Chris19005." As "Chris19005," Newton was conducting searches arguably containing child pornography and he was downloading and sharing thousands of files containing child pornography. Additionally, "Chris 19005" posted a message on a Gigatribe blog stating that he "pay[s] money for the best young black boy pics or videos ages 10-13." The examination further showed that "Eric Newton, Jr.'s" credit card information was

saved in a Google account and the account name was saved as "Eric Newton." And the Windows user name was "Eric."

{¶ 40} Additionally, the evidence showed several email addresses connected to the phone, including Ericnelson19005@gmail.com; Ericnewtonjr@gmail.com; Ericjr1981@gmail.com; and Ericjr19005@yahoo.com. In the emails section of the phone, the examination revealed that "ericjr19005@yahoo" emailed "Mr. Cock" a message soliciting child pornography. Newton also sent a message to this same person indicating that Newton had viewed the pornography sent by Mr. Cock, that he desired more, and he promised to likewise "send more." The documents section of the phone contained Newton's resume, which included his home address and the email address "ericnewtonjr@gmail.com." The resume was created on May 3, 2013, and modified on October 21, 2014. Other documents discovered on the phone included several photos of Newton and unidentified children.

{¶ 41} Finally, in the messages section of the phone, law enforcement officers discovered text messages from Newton's codefendant in a companion case, Jose Rivera. The messages ask "Chris" to "hurry" and "call me." And the evidence shows that during the initial traffic stop that led to the search warrant of the contents of the phone and ultimately the search of Newton's residence, Newton asked the officers if he could have his cell phone back.

{¶ 42} We find the jury could reasonably infer from the foregoing evidence that Newton was in fact the perpetrator of the crimes charged.

{¶ 43} Newton claims that others had access to the Acer laptop, including his uncles, who stayed at the same home and had extensive computer knowledge. Newton's uncles, however, denied ever having downloaded or shared child pornography, and there was no evidence that the uncles' computers contained child pornography. Furthermore, Newton's uncle, Noland, who used Newton's bedroom when he came to town in April 2015, testified that he had only arrived days before the search warrant was executed, and the forensics examination had discovered child pornography on the Acer laptop dating as far back as 2014. Newton presented no evidence of other individuals who may have shared his cell phone. The jury evidently found the state's witnesses to be credible and it rejected the possibility that someone else used Newton's computer or cell phone to create, download, view, share, or offer for sale child pornography, which it was free to do.

{¶ 44} In light of all the evidence presented, we find the jury did not lose its way in finding Newton guilty of pandering sexually oriented matter involving a minor, illegal use of a minor, and possessing criminal tools. His convictions are therefore not against the manifest weight of the evidence.

{¶ 45} Newton's second assignment of error is overruled.

{¶ 46} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

ANITA LASTER MAYS, P.J., and
RAYMOND C. HEADEN, J., CONCUR