[Cite as *State v. Miklavcic*, 2024-Ohio-2268.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                               :

     Plaintiff-Appellee,          :

                           No. 113263

     v.                           :

JOSEPH MIKLAVCIC,                            :

     Defendant-Appellant.         :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 13, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-681007-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Omar Siddiq, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant*.

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Joseph Miklavcic ("Miklavcic"), appeals his attempted felonious assault conviction, claiming that the trial court erred in

sentencing him to a maximum sentence and ordering him to pay the maximum fine. For the following reasons, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} In June 2023, Miklavcic was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony, which is punishable by a prison sentence of 2, 3, 4, 5, 6, 7 or 8 years, imposed in yearly increments and up to a $15,000 fine. The indictment alleges that on or about December 31, 2022, Miklavcic "knowingly cause[d] serious physical harm to [the victim,]" who was his girlfriend at the time. Approximately, two months later Miklavcic entered into a plea agreement with the state of Ohio wherein Miklavcic would plead guilty to an amended count of attempted felonious assault, which is a third-degree felony and is punishable by a prison term of 9, 12, 18, 24, 30, or 36 months and up to a $10,000 fine. At the plea hearing, the court advised Miklavcic that he is "pleading guilty to an F-3, [which is] punishable by nine to 36 months and a potential fine of $10,000. It is probationable." (Tr. 8.) Following the completion of the Crim.R. 11 colloquy, the trial court accepted Miklavcic's guilty plea. The trial court referred the matter to the county's probation department for a presentence-investigation and report ("PSI") and continued the matter for sentencing.

{¶ 3} In September 2023, the trial court conducted the sentencing hearing. The court began by announcing that it had reviewed the PSI, which included letters written by other alleged victims of Miklavcic not affiliated with the instant case. The trial court stated that some of these letters were signed with the use of numbers in

place of names in order to hide the writer's identity. Because some of these letters were unidentified and the authors were not present in the courtroom, the trial court ruled that it would not consider them. The court offered the parties a continuance to interview the authors of the letters. The parties elected, however, to proceed with sentencing.

{¶ 4} At the hearing, the victim and the state addressed the court. The victim began by referencing the impact statement she provided to the court. She expressed to the court that New Year's Eve day of 2022

> was a day that changed mine and my children's life forever. It was a day I survived an unimaginable physical beating from [Miklavcic], a beating that resulted in severe bruising, loss of consciousness, and a concussion so severe it took hours for me to become capable of forming a proper sentence. [Miklavcic's] final kick to my head was a moment I had to relive for months to follow due to the debilitating dizziness I would experience. Although the physical aspects of this event have dissipated, the fear, anxiety, and embarrassment and guilt will never go away. [Miklavcic's] continuous display of willingness, ability, lack of remorse and calculated nature has poisoned our daily routine and robbed my children of a piece of their innocence.

(Tr. 19-20.)

{¶ 5} The victim then told the court about herself and her active involvement in the community, which Miklavcic tried to destroy when on March 11, 2023, he posted a sexually explicit video of her on her Facebook page. This event caused her to report it to the police and to report the assault on December 31, 2022.

{¶ 6} The trial court then asked the victim questions with the following exchange:

COURT: * * * This incident occurred December 31, 2022, and apparently [Miklavcic] was upset because he thought you were texting another male earlier in the day; is that right?

[VICTIM]: Correct

COURT: So according to the police report, he struck you with the back of his right hand and then threw you into a wall by your hair, threw her onto the bed and began choking her until she was almost unconscious. Is that true?

[VICTIM]: Yes.

COURT: Then punched [you] in the thigh several times for five minutes. Dragged [you] onto the floor, then began punching [you] in the head with a closed fist for several times. Is that true?

[VICTIM]: Joseph, stop. No, please, Joseph, stop. That's what comes next I'm crawling across the floor to get away from him. I understand, Joseph, I understand. That's what I was saying before he kicked me in my head. And I woke up in a shower of him tapping my cheeks telling me, Stay with me.

* * *

COURT: Then after [you] regained consciousness, [Miklavcic] verbally confronted [you] for approximately two hours. While Miklavcic was talking to her, she received another text message from another male. Miklavcic became enraged at this and kicked her. Miklavcic told [the victim] she would not leave the house alive, made a phone call and asked someone over the phone * * * if, quote, they still have that plastic, close quote. Do you know what that means?

[VICTIM]: I interpreted it as plastic for my body.

COURT: Oh. Miklavcic then went into the bedroom and [the victim] ran out of the house. [You] later went to Lakewood Hospital and [were] diagnosed with [a] concussion.

(Tr. 25-27.)

{¶ 7} The state proceeded:

[STATE]: * * * Your Honor, I have been a prosecutor for 15 years and at no point in my career over multiple counties have I seen a defendant

as controlling, as manipulating, conduct as offensive as I've seen in this case by [Miklavcic]. Your Honor, here are some of the text messages that are in this case he sent to the victim. "You don't conduct yourself properly. I'm still disappointed. Maybe you need another beat down."

[COURT]: When was that sent?

[STATE]: That was sent on 3/8, so of this year. The next day, "I almost pulled up just to slap the fuck out of you. Chose the higher road. You probably had someone over. I would have ended up killing you both and you," all in capitals, "are not worth that."

Later that same day, "You deserve to get your face crushed in." It goes on, "I'm going to end your life. Keep playing stupid."

[COURT]: What was the date of that?

[STATE]: That's all on 3/9, Your Honor, '23. * * * [Miklavcic] indicates back on 9/19, I believe of '22, Your Honor, "No, I'm not your boyfriend, I'm your man. I'm thinking maybe I should take the tip of your index off, help clear things up for you. Maybe you take me lightly."

(Tr. 28-29.) Then, the state recommended that the trial court sentence Miklavcic to 36 months in prison.

{¶ 8} The court was provided with three letters from the defense in support of Miklavcic. The letters were from his union carpenter president, his AA sponsor, and a woman in Florida that says she has known him for five years. Defense counsel then began by telling the court about Miklavcic's childhood, emphasizing the severe beatings Miklavcic endured by his father causing him to miss school. Defense counsel believed Miklavcic has remorse today. Defense counsel reminded the court that Miklavcic pled guilty to a third-degree felony, which is a probationable offense, and requested that the court impose community-control sanctions with some type of counseling. Miklavcic then addressed the court:

I'm really sorry that we're all here today and everything that did happen. Nothing * * * like those, the text messages and those pictures, it's inexcusable, like, that, behavior. You know, we'd get in arguments, it would get heated. I'd lash out and just say mean, horrible things, because I try to, like, scare her away from me and things like that, or I don't know. I'm really not violent by nature. I say horrible things because I found my pen is mightier than the sword[.]

(Tr. 42.)

{¶ 9}   The court went on to sentence Miklavcic stating:

I have to say that this is — I concur with the assessment from the State of Ohio that this is one of the most serious [defendants] I've ever seen in the 42 years I've been doing this. Anybody who would threaten to kill and then assault and then post a video, which is a horrific act of violence against the victim in the case, should be alarmed at the behavior of this defendant, no question. Here he is publishing for the world his threats to kill her, clearly indicating he's going to do it. And for anybody who doesn't think that this is a serious situation, then I would encourage them — and you might want to enter that photograph into evidence of the severed fingers, and he is threatening to play digit game with the victim in this case. Well, you're not going to be doing this for 36 months, because you have to be sentenced to the maximum, because I regard you as the most dangerous offender, one of the most dangerous offenders that's been in my courtroom for a charge of this nature.

This victim was horribly treated, beaten terribly, punched in the head, punched in the thighs, lost consciousness, dragged into a shower, threatened with death. And I understand he does not have a substantial criminal record, but the behavior and conduct in this case alone clearly demonstrates that the maximum for the attempted felonious assault charge is appropriate, which is 36 months. * * * Upon your release from the institution on an F3, you will be subject to a minimum mandatory post-release control of one to three years.

Additionally, the court is going to impose a $10,000 fine and order you to pay court costs because of the severity and the nature of this case and the impact it not only has had upon the victim in this case, but the entire community.

(Tr. 48-50.)

{¶ 10} Miklavcic now appeals, raising the following two assignments of error for review:

> **Assignment of Error One:** The trial court abused its discretion in sentencing a first-time offender to the maximum prison sentence available.

> **Assignment of Error Two:** The trial court abused its discretion in imposing maximum fines without considering [Miklavcic's] ability to pay.

## II. Law and Analysis

{¶ 11} In the first of his two assigned errors, Miklavcic claims that the trial court erred when it imposed a maximum sentence on his one count of attempted felonious assault. Relying on *State v. Kalish*, 120 Ohio St. 3d 23, 2008-Ohio-4912, 896 N.E. 2d 124, he argues that, given his lack of criminal record, the maximum sentence was an abuse of discretion.

{¶ 12} Initially, we must address Miklavcic's mistaken reliance on *Kalish* when reviewing a sentence. *Kalish* does not provide the appropriate standard for review because that decision was abrogated eight years ago. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 6-7. Rather, when reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *Id.* at ¶ 9. Under that statute, an appellate court may increase, reduce, or otherwise modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *Id.* at ¶ 21. "A sentence is contrary to law if the sentence falls outside

the statutory range for the particular degree of offense or the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12." *State v. Rivera*, 8th Dist. Cuyahoga No. 104549, 2018-Ohio-262, ¶ 10, citing *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13.

{¶ 13} We note that a trial court "'fulfills its duty under the statutes by indicating that it has considered the relevant sentencing factors.'" *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 243, quoting *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 14. As the *Clinton* Court stated:

> The court "need not go through each factor on the record — it is sufficient that the court acknowledges that it has complied with its statutory duty to consider the factors without further elaboration." [*Smith* at ¶ 14]. In fact, consideration of the appropriate factors set forth in R.C. 2929.11 can be presumed unless the defendant affirmatively shows to the contrary. *State v. Davis*, 8th Dist. Cuyahoga No. 104221, 2016-Ohio-7964, ¶ 35.

*Id.* at 243.

{¶ 14} Here, there is no dispute that the 36-month sentence imposed was within the statutory range. When imposing its sentence, the court stated that it concurred with the assessment from the state that "this is one of the most serious [defendants] I've ever seen in the 42 years I've been doing this. Anybody who would threaten to kill and then assault and then post a video, which is a horrific act of violence against the victim in the case, should be alarmed at the behavior of this defendant, no question." (Tr. 48.) Moreover, the record reflects that the trial court

complied with its obligations under R.C. 2929.11 and 2929.12 and stated that it considered these factors in the sentencing journal entry. Therefore, we find that the trial court's sentence was proper. Indeed, "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 42.

{¶ 15} Therefore, the first assignment of error is overruled.

{¶ 16} In the second assignment of error, Miklavcic argues that "the trial court abused its discretion in imposing maximum fines without considering Mr. Miklavcic's ability to pay."

{¶ 17} This court has stated that while R.C. 2929.19(B)(5) requires that the trial court must consider the offender's present and future ability to pay the amount of the sanction or fine before imposing a financial sanction, "'[t]here are no express factors that must be taken into consideration nor specific findings that must be made by the court on the record, but there must be some evidence in the record that the trial court considered the defendant's ability to pay.'" *State v. Schneider*, 8th Dist. Cuyahoga No. 96953, 2012-Ohio-1740, ¶ 10, quoting *State v. Jacobs*, 189 Ohio App.3d 283, 2010-Ohio-4010, 938 N.E.2d 79, ¶ 11 (8th Dist.), citing *State v. Cosme*, 8th Dist. Cuyahoga No. 90075, 2008-Ohio-2811, ¶ 34. "An appellate court is to 'look to the totality of the record' to see if the court considered a defendant's ability to pay, and a trial court has satisfied this requirement when the record shows that the court

considered a PSI that provides pertinent financial information regarding the offender's ability to pay restitution." *State v. Newton*, 8th Dist. Cuyahoga No. 107195, 2019-Ohio-3566, ¶ 49, quoting *State v. Lewis*, 8th Dist. Cuyahoga No. 90413, 2008-Ohio-4101, ¶ 12, citing *State v. Smith*, 4th Dist. Ross No. 06CA2893, 2007-Ohio-1884, ¶ 42. "'The trial court may comply with this obligation "by considering a presentence-investigation report, which includes information about the defendant's age, health, education, and work history." "The court's consideration * * * may be inferred from the record under appropriate circumstances." (Citations omitted.)'" *State v. Aniton*, 8th Dist. Cuyahoga No. 102440, 2015-Ohio-4080, ¶ 19, quoting *State v. Tate*, 2d Dist. Montgomery No. 25386, 2013-Ohio-5167, ¶ 52.

{¶ 18} Miklavcic argues that while he "had a good job, there is no guarantee he'll find the same kind of work when he leaves prison after three years. The trial court plainly did not consider any of that, much less the impact a $10,000 fine would have on a person forced into collections as soon as they emerged from the prison." We note that "[t]he fact that a defendant is 'indigent' * * * does not preclude a trial court from imposing financial sanctions." *State v. Brown*, 2020-Ohio-4474, 158 N.E.3d 972, ¶ 42 (8th Dist.), citing *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 76 (8th Dist.); *State v. Cruz*, 8th Dist. Cuyahoga No. 106098, 2018-Ohio-2052, ¶ 28; *Aniton* at ¶ 20. Likewise, a lengthy prison sentence does not necessarily preclude a trial court from imposing financial sanctions. *Brown* at ¶ 42, citing *Nitsche* at ¶ 76.

{¶ 19} In this case, Miklavcic did not object to the court's imposition of the $10,000 fine. Although the trial court did not specifically state on the record the exact words that it had considered Miklavcic's present or future ability to pay the financial sanction, the trial court specifically indicated on the record that it considered the PSI, which included Miklavcic's education, age, employment history, and the fact that he owned his home. Furthermore, the record reveals that throughout the sentencing hearing it was stated numerous times that Miklavcic was 34 years old, was steadily employed as a union carpenter since he was 18 years old, and that he owned his own house. Furthermore, while the victim did incur medical bills caused by Miklavcic brutal assault she did not request any restitution from Miklavcic. Thus, based on the record before us, we cannot say that the trial court failed to consider Miklavcic's ability to pay the fine.

{¶ 20} Accordingly, Miklavcic's second assignment of error is overruled.

{¶ 21} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR