[Cite as *State v. Lunsford*, 2026-Ohio-2327.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                    :

    Plaintiff-Appellee,              :

                                        No.  115878

    v.                                              :

CHARLES LUNSFORD, III.,                   :

    Defendant-Appellant.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART AND REMANDED
**RELEASED AND JOURNALIZED:**  June 18, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No.  CR-25-702163-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, and Arwa Elmashae, Legal Intern, *for appellee*.

Gregory T. Stralka, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Charles Lunsford ("Lunsford") appeals his consecutive sentences for sexual battery and other charges.  For the reasons that follow, we affirm in part and remand the matter for a limited resentencing hearing for the purposes of notifying Lunsford of his Tier III sex-offender status.

## I. Factual and Procedural History

{¶ 2} In May 2025, a grand jury convened and indicted Lunsford in a 15-count indictment including five counts of rape, one count of attempted rape, three counts of unlawful sexual conduct with a minor, one count of abduction, two counts of domestic violence, two counts of aggravated menacing, and one count of intimidation of an attorney, victim, or witness in a criminal case. The indictment alleged that Lunsford committed these crimes against the victim, the child of a former girlfriend, who was eight years old at the time the incidents began and 26 years old at the time of the indictment.

{¶ 3} In October 2025, the parties entered into a plea agreement by which the State would dismiss the remaining charges in exchange for guilty pleas to rape as amended to sexual battery in violation of R.C. 2907.03(A)(1), a felony of the second degree, in Count 1; three counts of unlawful sexual conduct with a minor with a furthermore clause that Lunsford was ten or more years older than the victim at the time of the offenses, high-tier felonies of the third degree, as charged in Counts 6, 7, and 8; abduction, a low-tier felony of the third degree, as charged in Count 10; and intimidation of an attorney, victim, or witness in a criminal case, a misdemeanor of the first degree, as charged in Count 13. In addition, the parties' plea agreement included conditions that Lunsford would have no contact with the victim and the charges would not be considered allied offenses of similar import.

{¶ 4} During the plea colloquy, the trial court informed Lunsford that he would be classified as a Tier III sex offender. The court then requested a form from

Lunsford's counsel and proceeded to advise Lunsford of some of his reporting requirements. The court explained that Lunsford was required to register his address "for life." Once released from prison, the court noted that Lunsford would have three days to report to the county sheriff to register his address and then he would have to register in person with the sheriff every 90 days for the rest of his life. Finally, the court noted that Lunsford would be subject to additional felony charges if he failed to report. A copy of the signed form defining the complete Tier III reporting requirements was included in the record. Lunsford subsequently pleaded guilty pursuant to the plea agreement. The trial court ordered a presentence investigation and continued the case for sentencing.

{¶ 5} The case was reconvened for sentencing in November 2025. The trial court confirmed with the parties that they had reviewed the presentence-investigation report and then asked the parties to make statements. The State informed the court that Lunsford began a relationship with the victim's mother ("Mother") when the victim was four-months old. Lunsford and Mother subsequently had three children together. Lunsford began sexually abusing the victim when she was eight years old. She did not disclose the abuse for many years because Lunsford told her he would hurt Mother and her siblings if she told on him.

{¶ 6} The State further represented that Lunsford raped the victim when she was 14 years old, which resulted in her pregnancy and the birth of a child when she was 15. The victim lied to Mother regarding who the father was. Lunsford told the victim that he was going to be with her forever and this was how life was going to be

for her.  Lunsford married the victim when she was "of age."  Mother originally raised the couple's child, but when the child was eight years old, Mother placed the child with Lunsford and the victim.

{¶ 7} In 2021, Mother learned that Lunsford was the father of the victim's child and she reported it to the police.  When the police first interviewed the victim, she told them that sexual conduct was consensual when she was 14.  She later told detectives that she lied because Lunsford told her to "remember, you're coming home with me.  Not them."  After domestic-violence incidents occurred between them in March 2025, the victim left Lunsford.

{¶ 8} A representative from the Cleveland Rape Crisis Center read the victim's statement into the record:

> To whom it may concern:
>
> My name is [Y.C.].  I am a victim.  I grew up around [Lunsford].  I saw him as a father figure.  Little did I know that my trust in him as my father would be betrayed by him from a very young age.
>
> I became his victim in front of my mother.  He treated me as his child, but behind the closed doors, he was a monster in disguise.
>
> I was abused sexually and lived my life in fear.  He always said he would kill my family if I opened my mouth about anything.  With so much fear in me, I kept my mouth closed and endured years and years of sexual abuse.
>
> At fifteen, a child myself, I became pregnant.  Imagine the fear of bringing a child into this world when I, myself, was a child forced to be grown.
>
> My mother had no idea the lies that I told and the pain that I was going through.  Even though my mother didn't turn her back on me or the child, she kept [the child] and brought [the child] up as her own.  She had always been the provider.

Years of torture, living in a house where my mom was working two jobs to keep us afloat and me, having to play the adult role behind her back, being threatened.

He took my childhood away. He forced me to be grown before my time and I was forced to marry him.

Imagine marrying the man who took your child away because of fear, then being kept away from my family and my blood for years.

This man, or should I say monster, doesn't deserve any leniency. He doesn't deserv[e] to be free. He needs to be put away so he never destroys any other person's life like he did mine. He destroyed the little girl in me, and I thought it was okay. He is a monster is the only way to describe him.

I am [Y.C.]. Not a victim, but a survivor.

Thank you.

{¶ 9} The trial court then asked to hear from the defense. Lunsford's trial counsel stated that he believed that the plea to the amended charges of sexual battery and unlawful sexual conduct with a minor were consistent with what would have occurred if the case had gone to jury trial because it was unlikely a jury would have found Lunsford guilty of rape. Counsel went on to note that Lunsford admitted serious felonies with knowledge there would be a prison sentence. Counsel pointed out that there were "social factors" implicit in this case and that society had changed how it viewed Lunsford's conduct. Counsel claimed that these offenses occurred prior to the #MeToo movement, in a different "age." He further noted that Harvey

Weinstein was winning awards and Roman Polanski was winning "film festival activities."[1]

{¶ 10} Trial counsel went on to explain that his client understood "today" that he could not do what he did and would not do it again. In support of this belief, counsel referenced the Ohio Risk Assessment Summary that accompanied the presentence-investigation report. He noted that Lunsford's scores showed "an extremely limited risk to reoffend." Finally, counsel requested that the court impose a prison term of three years. Counsel argued that this was a "one path" incident and unlikely to recur.

{¶ 11} Lunsford then gave a brief statement, apologizing for what he had done. He represented that he was wrong and was not thinking. He also claimed that he was going through a lot of things at that time and that he made some "poor choices."

{¶ 12} The trial court began its sentencing by noting that the Ohio Risk Assessment tool was "complete garbage." The court pointed out that Lunsford had eight prior convictions, five of which were felonies. The court noted that "[h]is risk of recidivism is pretty high if we incorporate common sense and not the Ohio Risk Assessment tool." The court went on to describe the case as "the grossest" it had

---

[1] Weinstein was accused of sexual assault in 2017 and allegations against him went back as far as the late 1990s, while Polanski pleaded guilty to unlawful sexual assault of a minor in 1977, fled the country, and remains a fugitive. [https://perma.cc/5T5W-9UX2]; https: //www.npr.org/2022/07/18/1112004834/polanski-sex-case-sentencing (accessed Apr. 29, 2026) [https://perma/cc/VFE5-94C9]. It is unclear what "age" trial counsel was referencing.

seen in 27 years, where sexual relations started between Lunsford and the victim at age eight and Lunsford impregnated her at age 14. In addition to the harm to the victim, the court addressed the unspoken harm to her child.

{¶ 13} The court stated that it was imposing consecutive sentences and imposed a term of 8 to 12 years on the sexual-battery charge; 5 years on each of the three unlawful-sexual-conduct-with-a-minor charges to run consecutively with one another; 36 months on the abduction charge; and 180 days on the intimidation charge to run concurrently to the remaining counts. In total, the trial court imposed a term of 23 to 27 years in prison.

{¶ 14} After informing Lunsford that he would be classified as a Tier III sex offender, the court noted:

> If you do live long enough to get out, you will have three days to appear at the sheriff of the county that you choose to exist in, and you will have to register your address with that sheriff and then verify your address by reporting in person every 90 days for the rest of your pathetic life.

{¶ 15} The journal entry included the sentence as announced in open court but did not include that Lunsford was a Tier III sex offender or the registration requirements. Lunsford filed his notice of appeal on December 3, 2025. On December 5, 2025, the trial court filed a nunc-pro-tunc entry. The entry did not restate the previously issued sentence, it merely contained the language that Lunsford was designated a Tier III sex offender and the reporting requirements attendant with that status, including requirements that he report his school, higher education, and/or employment information to the sheriff.

{¶ 16} Lunsford appealed, assigning the following errors for our review.

### Assignment of Error No. 1

The trial court's imposition of consecutive sentences was contrary to law.

### Assignment of Error No. 2

The trial court's nunc pro tunc entry is invalid.

## II. Law and Analysis

{¶ 17} In the first assignment of error, Lunsford argues that the imposition of consecutive sentences was contrary to law relying on *State v. Kalish*, 2008-Ohio-4912. However, this court has noted that *Kalish* was abrogated ten years ago by the Ohio Supreme Court's decision in *State v. Marcum*, 2016-Ohio-1002, ¶ 6-7. *State v. Miklavcic*, 2024-Ohio-2268, ¶ 12 (8th Dist.). The leading opinion in the *Kalish* decision found that appellate courts must go through a two-step process by first determining whether the sentencing court complied with all applicable rules and statutes to determine if the sentence is contrary to law. *Kalish* at ¶ 4. If the first step is satisfied, the appellate court reviews the sentencing court's decision for an abuse of discretion. *Id.* In *Marcum,* the Court found that appellate courts were required to follow the plain language of R.C. 2953.08(G)(2). *Marcum* at ¶ 7. Accordingly, our standard of review for a felony sentence is set forth in R.C. 2953.08(G)(2). *Id.*

{¶ 18} Under R.C. 2953.08(G)(2), an appellate court "shall review the record, including the findings underlying the sentence or modification given by the sentencing court" and may increase, reduce, modify, or vacate and remand the

sentence for resentencing but only if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶ 19} When challenging consecutive sentences, a defendant may argue that (1) "consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4)"; or (2) "the record does not support the court's findings made pursuant to R.C. 2929.14(C)(4)." *State v. Reindl*, 2021-Ohio-2586, ¶ 13 (8th Dist.), citing *State v. Nia*, 2014-Ohio-2527, ¶ 16 (8th Dist.), and R.C. 2953.08(G)(2).

{¶ 20} Lunsford does not challenge whether the trial court made the findings required under R.C. 2929.14(C)(4), nor does he argue that the record fails to support those findings. Rather, Lunsford argues that the trial court failed to address the factors in R.C. 2929.11 and 2929.12 because the court called the state sentencing guidelines "complete garbage" and did not evaluate Lunsford's case according to the law.

{¶ 21} It must be noted that the factors set forth in R.C. 2929.11 and 2929.12 are not taken into consideration in determining whether consecutive sentences are appropriate. *State v. Vinson*, 2016-Ohio-7604, ¶ 64 (8th Dist.). As discussed above, the necessary findings for consecutive sentences are set forth in R.C. 2929.14(C)(4).

{¶ 22} However, to the extent that Lunsford claims that the trial court ignored the factors set forth in R.C. 2929.11 and 2929.12 because he referred to the sentencing guidelines as "complete garbage," the trial court's statement was not directed at state sentencing guidelines. Rather, the court did not agree with the Ohio Risk Assessment System that scored Lunsford at a low-to-medium risk of recidivism based on the facts of the case and where Lunsford had five prior felony convictions.[2]

{¶ 23} The trial court noted:

[Defense counsel], thank you for proving or pointing out what I have long suspected; that the Ohio Risk Assessment tool is complete garbage.

Your client has committed, I don't know, eight prior offenses, five of which were felonies. His risk of recidivism is pretty high if we incorporate common sense and not the Ohio Risk Assessment tool.

Maybe he won't get another chance to groom a four-year old for the next two-decades and impregnate her and marry her, but that's only because I'm going to give him consecutive time, and he's unlikely to live to see freedom again.

Sexual relations started between your client, [Lunsford], and the victim at age eight, according to the pre-sentence investigation. It's clear from DNA science that he impregnated her at age 14, and she gave birth at age 15. Yuck.

It's hard to process what a disgusting, vile human [Lunsford] is to his core, and the – just the wake of dysfunction that he's left in his path.

I mean, nobody's talked about the child of their relationship and what kind of confused life [they're] going to have. Awful, awful, awful.

---

[2] The Ohio Risk Assessment System has been recognized as a tool that can be used to aid in informed decision making at various points in the criminal justice system. *State ex rel. Semenchuk v. Ohio Adult Parole Auth.*, 2019-Ohio-4641, ¶ 20 (10th Dist.), citing *State v. Prater*, 2019-Ohio-2745, ¶ 27, fn. 5 (4th Dist.); *State v. Heath*, 2026-Ohio-1163, ¶ 9, fn. 2 (6th Dist.).

{¶ 24} The trial court's dissatisfaction with the Ohio Risk Assessment System's score does not equate with a failure to consider the statutory purposes and principles of sentencing. Neither R.C. 2929.11 nor 2929.12 requires the trial court to use this System. The trial court clearly considered the impact of Lunsford's offense on all parties involved, as well as the age and vulnerability of the victim when it started and its ongoing nature. Additionally, the sentencing entry noted that the trial court considered "all required factors of the law."

{¶ 25} Lunsford has failed to establish that the trial court did not consider the purposes and principles of sentencing under R.C. 2929.11 and 2929.12. Furthermore, Lunsford failed to establish that the trial court erred when it imposed consecutive sentences. Accordingly, the first assignment of error is overruled.

{¶ 26} In the second assignment of error, Lunsford challenges the trial court's nunc-pro-tunc entry filed after his notice of appeal. Lunsford argues that the nunc-pro-tunc entry added additional sanctions to his Tier-III-sex-offender-registration requirements that were not addressed in court and required a hearing in his presence. Appellee states that Lunsford's assignment of error lacks specificity and that, nevertheless, Lunsford signed a form at the plea hearing advising him of all the Tier-III-sex-offender-registration requirements. Therefore, appellee argues that the nunc-pro-tunc entry was proper because it served to correct an error, the absence of the Tier III sex-offender designation. Appellee argues that Lunsford was not prejudiced by any deficiencies at sentencing.

{¶ 27} Here, the trial court's sentencing entry did not mention that Lunsford was classified as a Tier III sex offender as required by R.C. 2929.19(B)(3)(a)(ii). It is well settled that the Tier III designation must be included in a written sentencing entry to be effective. *State v. Snapp*, 2025-Ohio-5276, ¶ 46 (12th Dist.), citing *State v. Halsey*, 2015-Ohio-3405, ¶ 10, 14 (12th Dist.); *accord State v. Dalton*, 2013-Ohio-5127, ¶ 11-12 (8th Dist.); *State v. Morgan*, 2014-Ohio-2625, ¶ 20 (7th Dist.); *State v. Emanuel*, 2021-Ohio-448, ¶ 5 (1st Dist.); *State v. Spicer*, 2021-Ohio-386, ¶ 11 (5th Dist.). Furthermore, the trial court's attempt to correct the entry with a nunc-pro-tunc entry was invalid because the court was without jurisdiction to issue the entry. *State v. Clausing*, 2022-Ohio-1762, ¶ 11-12 (8th Dist.) (finding that "the trial court lacked jurisdiction to issue the nunc pro tunc sentencing journal entry while the . . . appeal was pending" where the entry "directly related to and affected matters assigned as error on appeal").

{¶ 28} Nevertheless, we must consider Lunsford's argument that a hearing is necessary for the trial court to notify Lunsford of the Tier III sex-offender status and registration requirements. We find that a hearing is necessary. Pursuant to R.C. 2950.03(A)(2), the trial court was required to notify Lunsford at sentencing that he was a Tier III offender and that he was required to register. *State v. Embry*, 2018-Ohio-2204, ¶ 9 (1st Dist.); *State v. Harris*, 2010-Ohio-4127, ¶ 12 (10th Dist.).

{¶ 29} At sentencing, the trial court orally notified Lunsford of the basic reporting requirements, i.e., that he was required to register his address with the sheriff and continue to do so every 90 days for the rest of his life. It is undisputed

that the trial court did not review all the requirements in open court and on the record. A Tier III sex offender is required to register their address and provide notice when there is a change to the offender's address, school, institution of higher education, or place of employment, and these registration requirements are applicable if the offender moves out of the state. R.C. 2950.03(B).

{¶ 30} A nunc-pro-tunc entry presupposes that the trial court issued a sanction at the sentencing hearing, then failed to include aspects of the sentence in its sentencing entry. A nunc-pro-tunc entry allows the trial court to correct that mistake. *State v. Aarons*, 2021-Ohio-3671, ¶ 26 (8th Dist.) ("Proper use of a nunc pro tunc entry is limited to correcting a clerical error in a judgment or order so that the record reflects what the court actually did or decided."). While the trial court reviewed the basic requirements with Lunsford, the trial court did not comply with R.C. 2950.03(B). Clearly the trial court gave Lunsford a form with all the requirements to review at the plea hearing and Lunsford signed the form. However, the trial court did not reference the form at sentencing and only gave a brief recitation of the requirements. Accordingly, we cannot remand the case to the trial court to issue a nunc-pro-tunc entry. Such an entry would not serve to correct an omission in the original judgment because the trial court did not notify Lunsford of the requirements at sentencing.

{¶ 31} Accordingly, we sustain the second assignment of error and remand the case for a limited resentencing hearing to allow the trial court to fully comply with R.C. 2950.03(B) by properly notifying Lunsford of his sex-offender status and

requirements as mandated by R.C. 2950.03(A)(2) and to issue a complete journal entry including the Tier III sex-offender designation and registration requirements.

{¶ 32} Judgment affirmed in part, and case remanded for the limited purpose of notifying Lunsford of his Tier III sex-offender status and requirements.

It is ordered that appellee and appellant split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MICHELLE J. SHEEHAN, A.J., and
LISA B. FORBES, J., CONCUR